**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

THE BANK OF NEW YORK MELLON TRUST
COMPANY, N.A.,

                          Plaintiff,

        -against-

EDUCATION MANAGEMENT II LLC and
EDUCATION MANAGEMENT FINANCE III
LLC,

                          Defendants.

Case No. 17-cv-04610-KPF

---

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
### TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

AKIN GUMP STRAUSS HAUER & FELD LLP

Sean E. O'Donnell
Christopher W. Carty
Lucy C. Malcolm
Saurabh Sharad
One Bryant Park
New York, New York 10036
Tel: (212) 872-1093
Fax: (212) 872-1002

*Counsel for Plaintiff The Bank of New York Mellon
Trust Company, N.A.*

January 17, 2018

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ......................................................................................................................4
    A.    The TIA Action ...............................................................................................4
    B.    Marblegate's Direction to the Trustee to Commence this Action ................6
    C.    The Indenture's Limitations on Noteholder Suits and Rights
        Afforded to the Trustee ..............................................................................7

STANDARD ...........................................................................................................................8

ARGUMENT ..........................................................................................................................9
    I.    THE MOTION TO DISMISS SHOULD BE DENIED BECAUSE THE
        TRUSTEE HAS STANDING PURSUANT TO SECTION 6.05 OF THE
        INDENTURE ...................................................................................................9
        A.    The Trustee Has Standing to Pursue this Action Pursuant to Section
            6.05 of the Indenture .............................................................................10
        B.    Because Section 6.05 is the Basis for the Trustee's Authority, an
            Event of Default is Not Required ...........................................................14
    II.    THE MOTION TO DISMISS SHOULD BE DENIED BECAUSE
        DEFENDANTS FAILED TO MEET THEIR BURDEN TO ESTABLISH
        THAT RES JUDICATA BARS PLAINTIFF'S CLAIMS ....................................17
        A.    The TIA Action Involved Different Parties and Different Claims ............18
        B.    Marblegate Was Not In Privity with the Trustee in the TIA Action ...........19
        C.    The Successor Liability Claim Here Could Not, and Need Not,
            Have Been Asserted in the TIA Action ...................................................21
    III.    THE MOTION TO DISMISS SHOULD BE DENIED BECAUSE THE
        COMPLAINT STATES A CLAIM FOR SUCCESSOR LIABILITY
        AGAINST NEW EM FINANCE ........................................................................24

CONCLUSION ......................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Badger v. Berritto*,
  2000 WL 1721135 (S.D.N.Y. Nov. 17, 2000) ...................................................................18

*Berkery v. Archdiocese of Hartford*,
  352 F. App'x 487 (2d Cir. 2009) ...........................................................................9, 24

*Cortlandt St. Recovery Corp. v. Hellas Telecommc'ns*,
  996 N.Y.S.2d 476 (Sup. Ct. 2014) ............................................................................9

*Faber v. Metro. Life Ins. Co.*,
  648 F.3d 98 (2d Cir. 2011) ......................................................................................9

*Feldbaum v. McCrory Corp.*,
  1992 WL 119095 (Del. Ch. June 2, 1992) ..................................................11, 12, 13

*Ferris v. Cuevas*,
  118 F.3d 122 (2d Cir. 1997) ...................................................................................21

*Greenfield v. Philles Records*,
  780 N.E.2d 166 (N.Y. 2002) ...................................................................................10

*Interoceanica Corp. v. Sound Pilots*,
  107 F.3d 86 (2d Cir. 1997) ......................................................................................22

*Lago v. Krollage*,
  575 N.E.2d 107 (N.Y. 1991) ...................................................................................17

*Lange v. Citibank, N.A.*,
  2002 WL 2005728 (Del. Ch. Aug. 13, 2002) ...........................................................11

*LaSalle Nat. Bank v. Duff & Phelps Credit Rating Co.*,
  951 F. Supp. 1071 (S.D.N.Y. 1996) .........................................................................20

*Lawlor v. Nat'l Screen Serv. Corp.*,
  349 U.S. 322 (1955) ..........................................................................................22, 23

*Lumbard v. Maglia, Inc.*,
  621 F. Supp. 1529 (S.D.N.Y. 1985) ...................................................................11, 18

*Maharaj v. Bankamerica Corp.*,
  128 F.3d 94 (2d Cir. 1997) ......................................................................................21

*Marblegate Asset Mgmt., LLC, v. Educ. Mgmt. Corp.*,
  111 F. Supp. 3d 542 (S.D.N.Y. 2014) ...............................................................5, 6, 7

*Marblegate Asset Mgmt., LLC, v. Educ. Mgmt. Fin. Corp.*,
    846 F.3d 1 (2d Cir. 2017) ............................................................... *passim*

*Marvel Characters, Inc. v. Simon*,
    310 F.3d 280 (2d Cir. 2002) ...................................................................23

*Meckel v. Cont'l Res., Co.*,
    758 F.2d 811 (2d Cir. 1985) ....................................................................9

*Medcalf v. Thompson Hine LLP*,
    84 F. Supp. 3d 313 (S.D.N.Y. 2015) ......................................................23

*Miller v. Forge Mench P'ship Ltd.*,
    2005 WL 267551 (S.D.N.Y. Feb. 2, 2005) ..............................................11

*Monahan v. N.Y.C. Dep't of Corr.*,
    214 F.3d 275 (2d Cir. 2000) ..............................................................19, 20

*NYKCool A.B. v. Pac. Int'l Servs., Inc.*,
    2013 WL 1274561 (S.D.N.Y. Mar. 29, 2013) .........................................11

*In re Ore Cargo, Inc.*,
    544 F.2d 80 (2d Cir. 1972) .....................................................................15

*Pike v. Freeman*,
    266 F.3d 78 (2d Cir. 2001) .....................................................................17

*Quadrant Structured Prods. Co., Ltd. v. Vertin*,
    16 N.E.3d 1165 (N.Y. 2014) ..................................................9, 11, 12,14

*Rosado-Acha v. Red Bull Gmbh*,
    2016 WL 3636672 (S.D.N.Y. June 29, 2016) ..........................................9

*Ruiz v. Comm'r of Dep't of Transp.*,
    858 F.2d 898 (2d Cir. 1988) ...................................................................21

*Sharon Steel Corp. v. Chase Manhattan Bank, N.A.*,
    691 F.2d 1039 (2d Cir. 1982) ...................................................................9

*Silverman Partners LP v. Verox Grp.*,
    2010 WL 2899438 (S.D.N.Y. July 19, 2010) .........................................11

*Societe Anonyme Dauphitex v. Schoenfelder Corp.*,
    2007 WL 3253592 (S.D.N.Y. Nov. 2, 2007) ..........................................11

*Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het*
    *Kapitaal Van Saybolt Int'l B.V. v. Schreiber*,
    327 F.3d 173 (2d Cir. 2003) ..............................................................19, 20, 21

*Storey v. Cello Holdings, LLC*,
 347 F.3d 370 (2d Cir. 2003).................................................................23

*Taylor v. Sturgell*,
 553 U.S. 880 (2008).............................................................18, 20, 21

*TechnoMarine SA v. Giftports, Inc.*,
 758 F.3d 493 (2d Cir. 2014)..................................17, 18, 22, 23

*Tucker v. Arthur Andersen & Co.*,
 646 F.2d 721 (2d Cir. 1981)................................................................23

*U.S. Bank Nat'l Ass'n v. U.S. Timberlands Klamath Falls, LLC*,
 864 A.2d 930 (Del. Ch. 2004)................................................ *passim*

*U.S. Bank Nat'l Ass'n v. U.S. Timberlands Klamath Falls, LLC*,
 2004 WL 1699057 (Del. Ch. July 29, 2004)..................................12, 13

*United States v. Des Moines Valley R.R. Co.*,
 84 F. 40 (8th Cir. 1897) ................................................................20

*Victor v. Riklis*,
 1992 WL 122911 (S.D.N.Y. May 15, 1992) .....................................11

**Other Authorities**

Am. Bar Found., *Commentaries on Indentures* § 5.7 (1971) ...................8, 12

Plaintiff The Bank of New York Mellon Trust Company, N.A. ("Plaintiff" or the "Trustee"), respectfully submits this memorandum of law in opposition to defendants Education Management II LLC's ("New EM") and Education Management Finance III LLC's ("New EM Finance" and, together with New EM, "Defendants," and, together with Education Management Corporation ("Parent EDMC") and all of Parent EDMC's direct and indirect subsidiaries, "EDMC" or the "Company") Motion to Dismiss the Complaint (the "Motion" and, the memorandum of law in support of the Motion, "Def. Br.").

## PRELIMINARY STATEMENT

The Trustee is the indenture trustee for *all* holders of unsecured notes (the "Notes," and the holders, thereof, the "Noteholders"), issued by Education Management LLC ("Old EM") and Education Management Finance Corp. ("Old EM Finance," and together with "Old EM," the "Issuers"). Compl. ¶ 1. Pursuant to section 6.05 of the indenture governing the Notes (the "Indenture"), the Trustee brought this action at the direction of a *majority* of holders of the Notes (Marblegate Asset Management, L.L.C. and Marblegate Special Opportunities Master Fund, L.P., together, "Marblegate"). *Id.* ¶¶ 1, 10-11. By its Complaint, the Trustee seeks a declaratory judgment that Defendants are liable under the Notes to *all* Noteholders based upon a claim of successor liability. *Id.* ¶¶ 67-78.

In the summer of 2014, Marblegate (at that time, a *minority* Noteholder) filed suit (in its individual Noteholder capacity) against Parent EDMC and the Issuers—non-parties to this litigation—seeking to enjoin a series of restructuring transactions designed to ensure that the Noteholders could not recover the principal and interest due on the Notes (the "Intercompany Sale"). *Id.* ¶¶ 44-45. Although Marblegate did not obtain the preliminary injunction, it temporarily succeeded in preventing the Intercompany Sale from being completed as proposed. *Id.* ¶¶ 49-50. Specifically, after this Court ruled that the Intercompany Sale likely violated

Section 316(b) of the Trust Indenture Act of 1939, 15 U.S.C. § 777ppp(b) (the "TIA"), EDMC kept in place a guarantee of the Notes from Parent EDMC and, on or about January 5, 2015, added New EM as an additional guarantor, such that the Notes continued to be supported by obligors holding assets. *Id.*

The status quo materially changed in early 2017 when the United States Court of Appeals for the Second Circuit ruled that the Intercompany Sale did not violate the TIA. *Id.* ¶¶ 52-53. Thereafter, EDMC completed the Intercompany Sale as originally contemplated and removed all guarantees of the Notes, leaving assetless shell companies as the only obligors on the Notes. *Id.* ¶¶ 49, 62. Importantly, however, in its 2017 decision, the Second Circuit stated that EDMC's stripping of guarantees could give rise to tort claims, including claims for successor liability. *See Marblegate Asset Mgmt., LLC, v. Educ. Mgmt. Fin. Corp.*, 846 F.3d 1, 16 (2d Cir. 2017) ("*Marblegate Appeal*"). Accordingly, Marblegate (now a majority Noteholder by virtue of the Intercompany Sale) directed the Trustee to commence this litigation pursuant to section 6.05 of the Indenture. Compl. ¶¶ 1, 11.

Defendants do not attack the sufficiency of the allegations against New EM. Rather, Defendants contend that the Trustee is unable to assert its claim, arguing that (1) the Trustee lacks standing, and (2) the claims are barred by the doctrine of res judicata.[1] Defendants are wrong.

First, contrary to Defendants' arguments, the Trustee has standing to assert its claim for

---

[1] Defendants also contend that the Complaint should be dismissed against New EM Finance because that entity did not receive any of the Issuers' assets in connection with the Intercompany Sale. Based on that representation, the Trustee has offered to enter into a stipulation of dismissal of its claims against New EM Finance without prejudice to reassert its claim against New EM Finance if it learns facts in discovery or otherwise suggesting that New EM Finance did, in fact, receive Issuer assets. The parties have agreed in principle to dismissal of the claim against New EM Finance without prejudice and are in the process of documenting that agreement in the form of a written stipulation. As discussed in section III, *infra*, if the parties are unable to reach agreement on a stipulation of dismissal, that aspect of the Motion should also be denied based on the standard applicable at this stage of the proceedings.

successor liability notwithstanding the lack of an "Event of Default" that is "continuing."  *See*

Def. Br. at 2-14.  As discussed in detail in our August 24, 2017 letter to the Court and at the

October 10, 2017 Initial Pretrial Conference, the Trustee has authority to act pursuant to section

6.05 of the Indenture, which provides that holders of a majority of the Notes may direct the

Trustee to exercise any power conferred upon it, including the ability to assert non-contractual

claims—such as the successor liability claims at bar—without the existence of a continuing

Event of Default.  Yet Defendants largely ignore the Trustee's standing under section 6.05.  In

their 23-page memorandum of law, Defendants spend only three sentences on section 6.05,

quoting it in piecemeal and concluding that section 6.05 does not "permit the Trustee to exercise

any remedy absent a continuing Event of Default."  *Id.* at 14.  Defendants are mistaken.  They

rest their argument primarily upon section 6.03 of the Indenture, *see id.* at 11-12, which

expressly requires the existence of an "Event of Default" that is "continuing," in order for the

Trustee to act under that provision.  Glaringly absent from section 6.05, however, is any

requirement that an "Event of Default" exist, let alone be "continuing," in order for the Trustee to

be vested with standing under section 6.05.  Section 6.05 expressly permits a majority of

Noteholders to confer upon the Trustee the power and authority to pursue non-contractual claims,

such as the ones at bar, regardless of whether there is a continuing Event of Default.  *See*

Indenture § 6.05.

Second, this action is not barred by the doctrine of res judicata.  *See* Def. Br. at 14-21.

While Marblegate's prior action for a declaratory judgment and injunctive relief in the TIA

litigation was adjudicated on the merits, it involved separate parties and entirely different issues.

Contrary to Defendants' arguments, Marblegate and the Trustee were not in privity during the

TIA litigation.  Again, the Trustee represents *all* Noteholders and more than a majority of

Noteholders had approved the transactions that Marblegate was seeking to enjoin. Moreover, the successor liability claim could not have been asserted by Marblegate in the TIA litigation because section 6.06 of the Indenture (the no-action clause) barred Marblegate from pursuing such a claim and because the TIA litigation was commenced long before the acts giving rise to this action occurred.

## BACKGROUND

### A. The TIA Action

On August 27, 2014, EDMC announced an agreement with a majority of its secured and unsecured lenders on an out-of-court restructuring, which involved, among other things, an exchange of the Notes—issued by Old EM and Old EM Finance and guaranteed by Parent EDMC—for a combination of stock and warrants. Compl. ¶¶ 26-27.

Relevant here, the out-of-court restructuring included a feature called the "Intercompany Sale," which provided that if EDMC failed to obtain unanimous Noteholder support for the Notes exchange, EDMC would effectuate transactions to "replace" the Issuers of the Notes in EDMC's corporate structure with newly-created entities (later determined to be New EM and New EM Finance) that would hold EDMC's operational assets following the Intercompany Sale. *Id*. ¶¶ 30-31. Simultaneously, EDMC and its secured lenders would effectuate transactions to cause Parent EDMC to release its guarantee on the Notes. *Id*. The stated purpose of the Intercompany Sale was to ensure that Noteholders who did not consent to exchange their Notes would be left holding Notes where the only remaining obligors were empty shell companies. *Id*. ¶¶ 32-34.

On October 28, 2014—before the close of the exchange offer—Marblegate and Magnolia Road Capital, LP and Magnolia Road Global Credit Master Fund (together, "Magnolia") sued Parent EDMC, Old EM, and Old EM Finance in this Court, seeking (1) a declaratory judgment

that the proposed Intercompany Sale violated Section 316(b) of the TIA and section 6.07 of the Indenture (which incorporates section 316(b) of the TIA) and (2) injunctive relief (the "TIA Action").[2]  *Id.* ¶ 44; *see generally* Complaint, *Marblegate I*, 111 F. Supp. 3d 542 (No. 14-cv-8584), ECF No. 15 ("TIA Complaint").  The plaintiffs in the TIA Action—Marblegate and Magnolia—were minority Noteholders that, at the commencement of that action, collectively held approximately 10% of the Notes.  *See* TIA Complaint ¶¶ 18-19.

On December 15, 2014, this Court entered an order denying injunctive relief but held that Marblegate and Magnolia demonstrated a likelihood of success on the merits of their claim that the Intercompany Sale, if completed as proposed, violated section 316(b) of the TIA and section 6.07 of the Indenture.  Compl. ¶ 45.[3]  Following that ruling, EDMC completed the exchange of the Notes and effectuated many of the transactions proposed in the out-of-court restructuring, including aspects of the Intercompany Sale, but, importantly, it revised the Intercompany Sale such that (1) Parent EDMC continued to guarantee the Notes and (2) New EM was added as an additional guarantor of the Notes.  *Id.* ¶¶ 47-50.  The result of these revisions was that Marblegate's Notes would be paid by obligors on the Notes while those parties continued to litigate this Court's rulings with respect to section 316(b) of the TIA and section 6.07 of the Indenture.

On January 17, 2017, the Second Circuit vacated this Court's order, holding that the Intercompany Sale, as originally proposed, did not run afoul of section 316(b) of the TIA or section 6.07 of the Indenture.  *Id.* ¶¶ 52-53.  The Second Circuit, however, left open the possibility of future litigation if EDMC later completed the Intercompany Sale as originally

---

[2] As used herein, TIA Action refers to the underlying events and the litigation addressed in the cases *Marblegate Asset Mgmt., LLC, v. Educ. Mgmt. Corp.*, 111 F. Supp. 3d 542 (S.D.N.Y. 2014) ("*Marblegate I*") and *Marblegate Appeal*, 846 F.3d 1 (2d Cir. 2017).

[3] Following that ruling, Magnolia settled with the TIA defendants and voluntarily dismissed its claims, leaving Marblegate as the sole plaintiff.  *See Marblegate I*, 111 F. Supp. 3d 542 (No. 14-cv-8584), ECF No. 53.

contemplated, stating that "[b]y preserving the legal right to receive payment, we permit creditors to pursue available State and federal law remedies," including those "under State law theories of successor liability or fraudulent conveyance" when "creditors foreclose on a debtor's collateral and sell the collateral to a new entity meant to carry on the business." *Marblegate Appeal.*, 846 F.3d at 16; *see also* Compl. ¶ 53.

### B. Marblegate's Direction to the Trustee to Commence this Action

Following the Second Circuit's issuance of a mandate on March 29, 2017, Parent EDMC completed the release of its guarantee of the Notes, which also caused the release of the guarantee provided by New EM. *Id.* ¶¶ 49, 62; *see also* Judgment at 2, *Marblegate I*, 111 F. Supp. 3d 542 (No. 14-cv-8584), ECF No. 93 ("WHEREAS, Parent EDMC completed the release of the Parent Guarantee following issuance of the mandate from the Second Circuit.").

On June 13, 2017, prior to entry of judgment in the TIA Action, counsel for Marblegate— which, following the exchange completed in January 2015, became the majority Noteholder, holding nearly all of the outstanding Notes, Compl. ¶ 1—informed the Court and EDMC of its desire to pursue claims for successor liability. *See* Transcript of Hearing at 5:23-6:6, *Marblegate I*, 111 F. Supp. 3d 542 (No. 14-cv-8584), ECF No. 94. Because, as discussed below, the Indenture limits the ability of a Noteholder to pursue claims that do not implicate section 316(b) of the TIA or section 6.07 of the Indenture, however, counsel for Marblegate informed the Court and the parties that such successor liability claim would likely be asserted in a separate litigation by the Trustee. *Id.*

The Trustee, having received direction from Marblegate, as a holder of a majority of the Notes, pursuant to section 6.05 of the Indenture, commenced this action against New EM and New EM Finance on June 19, 2017. *See* Compl. ¶ 11. None of the parties to this action were parties to the TIA Action. Three days following the commencement of this action, on June 22,

2017, the Court entered judgment in the TIA Action. Judgment, *Marblegate I*, 111 F. Supp. 3d 542 (No. 14-cv-8584), ECF No. 93.

## C. The Indenture's Limitations on Noteholder Suits and Rights Afforded to the Trustee

Marblegate had to direct the Trustee to bring this action because section 6.06 of the Indenture—commonly referred to as a "no-action" clause—limits a Noteholder's ability to pursue claims, like the successor liability claim, on its own. *See* Indenture § 6.06. Section 6.06 provides that "[s]ubject to Section 6.07 hereof, no Holder of a Note may pursue any remedy with respect to this Indenture or the Notes" unless that holder can satisfy certain preconditions of the no-action clause, including that an Event of Default is continuing and holders of at least 25% of the outstanding Notes first requested that the Trustee pursue such remedy. *Id.* Thus, unless section 6.07 of the Indenture is implicated,[4] the no-action clause bars a Noteholder from bringing any action, on its own, relating to the Indenture or the Notes, and gives the Trustee the power to bring such a claim on behalf of all Noteholders. *Id.*

While nothing in section 6.06 requires the Trustee to commence an action, section 6.05 enables a majority of Noteholders to direct the Trustee to act. Section 6.05 provides:

> Section 6.05. *Control by Majority*. Holders of a majority in principal amount of the then total outstanding Notes **may direct** the time, method and place of **conducting any proceeding for any remedy available to the Trustee or of exercising any trust or power conferred on the Trustee**. The Trustee, however, may refuse to follow any direction that conflicts with law or this Indenture or that the Trustee determines is unduly prejudicial to the rights of any other Holder of a Note or that would involve the Trustee in personal liability.

*Id*. § 6.05 (emphasis added).

Thus, the Indenture's no-action clause restricts individual or minority Noteholders from

---

[4] Section 6.07 incorporates section 316(b) of the TIA's prohibition on the impairment of a Noteholder's rights (1) to receive payment of principal and interest on or after the respective due dates expressed in the Note and (2) to bring suit to enforce such right to payment. Indenture § 6.07.

pursuing remedies respecting the Indenture or Notes, but section 6.05 gives a majority of the Noteholders the right to direct the Trustee to take such action.  This makes sense because the general purpose of a no-action clause is to deter against strike suits or meritless lawsuits by individual noteholders that cause waste to the issuer and, by extension, the other noteholders.  *See* Am. Bar Found., *Commentaries on Indentures* § 5.7 (1971).  By delegating the ability to bring lawsuits related to the Notes to the Trustee, and requiring a Noteholder majority to direct the Trustee to take action, such concerns are addressed.

The Indenture further provides the Trustee with authority to pursue remedies—without Noteholder direction—following an Event of Default.  For instance, "[i]f an Event of Default occurs and is continuing, the Trustee may pursue any available remedy to collect the payment of principal, premium, if any, and interest on the Notes or to enforce the performance of any provision of the Notes or this Indenture."  Indenture § 6.03.  Moreover, section 6.02 allows the Trustee (or any Noteholder) to accelerate the Notes "if any Event of Default" (with certain exceptions) "occurs and is continuing."  *Id*. § 6.02.

Finally, section 6.10 makes clear that all rights and remedies provided in the Indenture are cumulative, providing as follows:

> Section 6.10. *Rights and Remedies Cumulative*. . . . [N]o right or remedy herein conferred upon or reserved to the Trustee or to the Holders is intended to be exclusive of any other right or remedy, and every right and remedy shall, to the extent permitted by law, be cumulative and in addition to every other right and remedy given hereunder or now or hereafter existing at law or in equity or otherwise.

*Id*. § 6.10.

## STANDARD

At this stage, the standards governing the Motion under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) are the same:  The Court should accept all of the Trustee's factual

allegations in the Complaint as true and draw all reasonable inferences in the Trustee's favor.

*See Berkery v. Archdiocese of Hartford*, 352 F. App'x 487, 488-89 (2d Cir. 2009).  The Trustee's

Complaint may not be dismissed if the Court determines that its allegations "plausibly give rise

to an entitlement of relief."  *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).  The

Court may also rely on the Indenture, and take judicial notice of its own records in the TIA

Action.  *See Rosado-Acha v. Red Bull Gmbh*, 2016 WL 3636672, at *6-7 (S.D.N.Y. June 29,

2016).

## ARGUMENT

**I.    THE MOTION TO DISMISS SHOULD BE DENIED BECAUSE THE TRUSTEE HAS STANDING PURSUANT TO SECTION 6.05 OF THE INDENTURE**

In order to establish standing, the Trustee must show that it has legal authority to assert

the claim at issue in the Complaint.  *See Cortlandt St. Recovery Corp. v. Hellas Telecommc'ns*,

996 N.Y.S.2d 476, 494 (Sup. Ct. 2014).  The parties agree that an indenture trustee derives its

powers and rights from the indenture.  *See* Def. Br. at 10-11; *see also Meckel v. Cont'l Res., Co.*,

758 F.2d 811, 816 (2d Cir. 1985) ("Unlike the ordinary trustee, who has historic common-law

duties imposed beyond those in the trust agreement, an indenture trustee is more like a

stakeholder whose duties and obligations are exclusively defined by the terms of the indenture

agreement."); *U.S. Bank Nat'l Ass'n v. U.S. Timberlands Klamath Falls, LLC*, 864 A.2d 930

(Del. Ch. 2004) ("*Klamath II*") (applying New York law).  The Indenture is governed by, and

construed in accordance with, New York law.  Indenture § 12.08.  Under New York law,

interpretation of indenture provisions is a matter of basic contract law.  *Sharon Steel Corp. v.

Chase Manhattan Bank, N.A.*, 691 F.2d 1039, 1049 (2d Cir. 1982).  And under New York

contract law, the Trustee plainly has standing to commence this action pursuant to the express

terms of the indenture.  *See Quadrant Structured Prods. Co., Ltd. v. Vertin*, 16 N.E.3d 1165, 1171

(N.Y. 2014); *Greenfield v. Philles Records*, 780 N.E.2d 166, 170 (N.Y. 2002) ("[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms.").

### A. The Trustee Has Standing to Pursue this Action Pursuant to Section 6.05 of the Indenture

Section 6.05 of the Indenture provides that "[h]olders of a majority in principal amount of the then outstanding Notes may direct the time, method and place of conducting any proceeding for any remedy available to the Trustee or of exercising any trust or power conferred on the Trustee." Indenture § 6.05. Thus, the Trustee has the authority to commence this action under section 6.05 if two prerequisites are met: (1) the Trustee must have been directed by holders of a majority in principal amount of the then outstanding Notes, and (2) commencing this action must be in pursuit of a "remedy available to the Trustee" or in accordance with a "trust or power conferred on the Trustee." *Id.*

Both conditions to Trustee standing under section 6.05 have been met here. First, as Defendants concede, the Trustee commenced this action at the direction of Marblegate—which now holds a majority of the outstanding Notes. Compl. ¶¶ 1, 11; *see also* Def. Br. at 1, 14. Second, asserting a claim for successor liability is most certainly in pursuit of "a remedy available to the Trustee" as well as in accordance with a "power conferred on the Trustee" pursuant to the Indenture. Nothing in the Indenture precludes the Trustee from pursuing claims of successor liability (i.e., "a remedy available to the Trustee"). Moreover, such "power [was] conferred on the Trustee" (1) by the direction of a majority of Noteholders, and (2) by virtue of the no-action clause limiting the Noteholders' ability to bring such a suit themselves. Indenture §§ 6.05, 6.06.

Absent any contractual prohibition, there would be little dispute that a noteholder could

assert a claim for successor liability. *See, e.g.*, *NYKCool A.B. v. Pac. Int'l Servs., Inc.*, 2013 WL 1274561, at *12-13 (S.D.N.Y. Mar. 29, 2013) (judgment creditor pursuing successor liability claim); *Silverman Partners LP v. Verox Grp.*, 2010 WL 2899438, at *6 (S.D.N.Y. July 19, 2010) (loan creditor sufficiently alleged successor liability); *Societe Anonyme Dauphitex v. Schoenfelder Corp.*, 2007 WL 3253592, at *3-4 (S.D.N.Y. Nov. 2, 2007) (judgment creditor adequately alleged claim for successor liability); *Miller v. Forge Mench P'ship Ltd.*, 2005 WL 267551, at *6-7 (S.D.N.Y. Feb. 2, 2005) (judgment creditor prevailed on successor liability claim); *Lumbard v. Maglia, Inc.*, 621 F. Supp. 1529, 1534-36 (S.D.N.Y. 1985) (secured creditor adequately alleged *de facto* merger claim against transferee).

The Indenture's no-action clause contained in section 6.06, however, broadly limits the Noteholders' right to "pursue any remedy with respect to this Indenture *or the Notes*," Indenture § 6.06 (emphasis added), and, therefore, prohibits a Noteholder like Marblegate from asserting, on its own, a claim for successor liability that is based on its ownership of Notes. *See Victor v. Riklis*, 1992 WL 122911, at *6 (S.D.N.Y. May 15, 1992) (holding no-action clause preventing holder from pursuing any remedy "with respect to [the] Indenture or the Securities" barred holder from asserting non-contractual claims for RICO violations and fraudulent transfers); *Quadrant*, 16 N.E.3d at 1173 (stating that no-action clauses, which prohibit a noteholder from pursuing remedies respecting the indenture and the securities themselves, bar "any claims individuals may have based on their status as securityholders"); *Lange v. Citibank, N.A.*, 2002 WL 2005728, at *7 (Del. Ch. Aug. 13, 2002) (applying New York law and finding no-action clause barred noteholders' non-contractual claims); *Feldbaum v. McCrory Corp.*, 1992 WL 119095, at *7-8 (Del. Ch. June 2, 1992) (holding, under New York law, no-action clause barred noteholders' fraudulent transfer claims because they "assert injuries arising from the bondholder

status of plaintiffs," and could therefore be "prosecuted by the trustees representing the bondholders as a group").

In contrast, nothing in the Indenture prohibits the Trustee from pursuing successor liability claims, and, by limiting the Noteholders' rights to pursue certain claims they otherwise could pursue on their own, the no-action clause necessarily confers the power to bring those claims on the Trustee. *See Feldbaum*, 1992 WL 119095, at *6 (observing no-action clauses address "twin problems" of "improvident litigation decisions" and "the risk of strike suits . . . by delegating the right to bring a suit enforcing rights of bondholders to the trustee . . . and by delegating to the trustee the right to prosecute such a suit in the first instance" (citing Am. Bar Found., *Commentaries on Indentures* §5.7 (1971))); *see also Quadrant*, 16 N.E.3d at 1176 ("[G]enerally a no-action clause prevents minority securityholders from pursuing litigation against the issuer, in favor of a single action initiated by a Trustee upon request of a majority of the securityholders."); *Klamath II*, 864 A.2d at 941 (holding that "a necessary corollary" to finding that non-contractual claims were subject to the indenture's no-action clause is that the indenture trustee has authority to bring those claims once any conditions imposed by the indenture are satisfied).

The decisions by the Delaware Chancery Court in *U.S. Bank National Ass'n v. U.S. Timberlands Klamath Falls, LLC*—which Defendants rely on throughout their brief, *see* Def. Br. at 10, 11, 13—while not controlling, are instructive. That case analyzed an indenture trustee's standing to assert non-contractual based claims for fraudulent transfer under an indenture similar to the one at bar, which was also governed by New York law. 2004 WL 1699057, at *2 (Del. Ch. July 29, 2004) ("*Klamath I*"). In *Klamath I*, the court addressed the trustee's standing with respect to the non-contractual claims separately from other claims that the defendants violated

the indenture. *Id.* at *2-5. With respect to the indenture-based claims, the *Klamath I* court held that the trustee lacked standing under that indenture's analogue to section 6.03 because the trustee had not alleged that an event of default had occurred or was continuing. *Id.* at *3. With respect to the non-contractual fraudulent transfer claims, however, the court's analysis did not end with section 6.03. *Id.* at *4-5. Indeed, recognizing that "a fraudulent conveyance claim *is* sufficiently related to the notes to fall under a trustee's duties pursuant to the indenture," the court held that the noteholders could have provided the trustee with authority to sue had they satisfied certain preconditions in the indenture to do so. *Id.* at *5 & n.42 (emphasis in original). However, because the noteholders had not done so, the trustee lacked standing. *Id.* at *5.

In *Klamath II*, after the trustee amended its complaint to assert that an event of default had occurred and was continuing and that the requisite percentage of noteholders requested the trustee to bring the action under the indenture's no-action clause, the defendants again moved to dismiss for lack of standing. 864 A.2d at 936-37. The defendants argued, among other things, that the indenture's analogue to section 6.03 did not authorize the trustee to assert non-contractual claims, like claims for fraudulent transfer, even if an event of default occurred and was continuing. *Id.* at 940. The court, however, found that the trustee had standing to assert fraudulent transfer claims because the indenture's no-action clause provided the trustee with "the power . . . to bring the claims," and the noteholders satisfied indenture prerequisites for the trustee to act. *Id.* at 940-42.[5]

Here, too, under the Indenture, the Noteholders generally "waive[d] their rights to bring claims that are common to all debtholders," *see Feldbaum*, 1992 WL 119095, at *7, but in so

---

[5] In *Klamath II*, the noteholders satisfied the conditions in that indenture's analogue to section 6.06 to request the trustee bring the suit, including providing notice that an event of default was continuing. 864 A.2d at 937. The noteholders did not purport to provide direction pursuant to that indenture's analogue to section 6.05, but the logic employed in the court's two opinions suggests that, had the noteholders satisfied the conditions of section 6.05 rather than section 6.06, the court would have reached the same conclusion.

doing, the Noteholders authorized the Trustee to pursue those precise claims on their behalf. And by authorizing the Trustee to bring the instant litigation upon the direction of a majority of the Noteholders, section 6.05 is in complete accord with the general purpose and intent of the Indenture's no-action clause (section 6.06)—to prevent wasteful suits by minority Noteholders, while also ensuring that the no-action clause does not have the perverse effect of prohibiting the Trustee from bringing a suit that benefits all Noteholders. *See Quadrant*, 16 N.E.3d at 1177 (holding no-action clause "cannot serve as an outright prohibition on a suit filed by a securityholder in the case where the Trustee is without authorization to act"); *Klamath II*, 864 A.2d at 941 (recognizing that "[t]o have held otherwise would have been to place the debentureholders in a Catch-22" where the noteholders are required to demand the trustee assert a claim in the first instance, but if the trustee follows that demand, it lacks standing).

## B. Because Section 6.05 is the Basis for the Trustee's Authority, an Event of Default is Not Required

Relying primarily on section 6.03, Defendants argue that the "Indenture gives the Trustee standing to sue *only* if an Event of Default occurs and is continuing." Def. Br. at 2 (emphasis added); *see also id.* at 6-7, 11. Not so. No such requirement exists under section 6.05. Indenture § 6.05. Indeed, section 6.05 does not even reference an Event of Default, *id.*, and it stands in stark contrast to other Indenture sections, including sections 6.02 and 6.03, which are expressly conditioned on the occurrence and continuation of an Event of Default. *See, e.g.*, *id.* § 6.03 (applying only "[i]f an Event of Default occurs and is continuing"); *id.* § 6.02 (same). Where, as here, sophisticated parties have included express requirements of an Event of Default in some contractual provisions, but omitted it in others, the maxim *expressio unius est exclusio alterius* provides that the omission must be construed as intentional. *See Quadrant*, 16 N.E.3d at 1172 ("[I]f parties to a contract omit terms—particularly, terms that are readily found in other, similar

contracts—the inescapable conclusion is that the parties intended the omission."); *see also In re Ore Cargo, Inc.*, 544 F.2d 80, 82 (2d Cir. 1972) (holding where sophisticated drafter omits term, *expression unius* precludes court from implying it within agreement's general language).[6]

In an attempt to argue otherwise, Defendants mischaracterize section 6.03 of the Indenture. Defendants state that section 6.03 provides that "the Trustee is authorized 'to pursue any available remedy' . . . *only* '[i]f an Event of Default occurs and is continuing.'" Def. Br. at 11 (emphasis added). Section 6.03 does not say that. Defendants inserted the word "only" into their description of section 6.03, and, by doing so, characterize it as a provision that would always prohibit the Trustee from pursuing remedies under the Indenture or the Notes unless an Event of Default has occurred and is continuing. Section 6.03, however, is permissive. It provides that the Trustee "*may* pursue any available remedy" to collect payment or enforce rights on the Notes "[i]f an Event of Default occurs and is continuing." *See* Indenture § 6.03 (emphasis added). It does not limit the Trustee's ability to pursue remedies or exercise its powers under other provisions of the Indenture.

Contrary to Defendants' contention, section 6.03 is not the exclusive provision that authorizes the Trustee to pursue remedies or bring suit. *See* Def. Br. at 11-12. Section 6.03 is entitled "*Other* Remedies," *see* Indenture § 6.03 (emphasis added), and the Indenture elsewhere

---

[6] Defendants devote a significant portion of their brief to arguing that an Event of Default never occurred. Def. Br. at 2-6, 7-8, 11-12. Because an Event of Default is not necessary to establish that the Trustee is authorized to sue pursuant to section 6.05, it is unnecessary to respond to those arguments in full. The notion, however, that the failure to pay payment-in-kind interest ("PIK Interest") would not constitute a default "in the payment when due of interest" under section 6.01(a)(ii) because the term "interest" excludes "PIK Interest," *see* Def. Br. at 4-5, constitutes a blatant misreading of the Indenture. Defendants argue that the Indenture's use of the term "interest" in section 6.01(a)(ii) refers only to cash interest and does not include PIK Interest. *Id.* This reading ignores that the Indenture defines PIK Interest as one type of "interest" to be paid and that such definition demonstrates that when the parties intended to refer to PIK Interest and cash interest separately, they knew how to do so. *See* Indenture § 2.01(d) (defining "PIK Interest" as "interest, in addition to the cash interest payable pursuant to Section 4.01 hereof"). That section 6.01(a)(ii) differentiates between "interest" and "Additional Interest," *see* Def. Br. at 4, does not mean that "interest" and "PIK Interest" are distinct. Throughout, the Indenture refers to "Additional Interest" separate from "interest," while not differentiating between "interest" and "PIK Interest." *See, e.g.*, Indenture §§ 2.04, 3.05, 3.07, 5.02, 6.02, 6.04, 6.07, 6.08.

expressly states that the remedies available under section 6.03 are not exclusive of any other right or remedy provided under the Indenture, but are instead intended to be cumulative. *See id.* § 6.10 ("[N]o right or remedy herein conferred upon or reserved to the Trustee or to the Holders is intended to be exclusive of any other right or remedy, and every right and remedy shall, to the extent permitted by law, be cumulative and in addition to every other right and remedy given hereunder or now or hereafter existing at law or in equity or otherwise.").

The Trustee's ability to "pursue any available remedy" under section 6.03 following a continuing Event of Default under the Indenture (i.e., a contractual claim) *without* direction from a majority of the Noteholders is wholly irrelevant to the Trustee's ability to file suit pursuant to section 6.05 after receiving such direction. *See Klamath II*, 864 A.2d at 942 ("Since section 6.6 requires noteholders seeking to assert non-contractual claims to make [a] demand upon the Trustee, that section must implicitly recognize the power of the Trustee to bring the claims, in response to a properly made demand *even where the Trustee would lack that power under section 6.3 without a demand*." (emphasis added)).

Similarly, and again contrary to Defendants' contention, it is entirely irrelevant that section 6.06 (the no-action clause) requires "an Event of Default [that] is continuing" before an individual *Noteholder* may pursue certain remedies. *See* Def. Br. at 13. Section 6.06 imposes conditions on individual *Noteholders* before they are permitted to bring certain claims. It imposes no such obligation on the Trustee—particularly where, as here, the Trustee's authority derives from section 6.05. If anything, section 6.06's reference to a continuing Event of Default further supports the Trustee's position because it is yet another example of how the drafting parties to the Indenture intentionally required this event in certain instances, but not in others.

All considered, Defendants' argument boils down to a simple premise: The Trustee may

not pursue any claim, at any time, unless there is an "Event of Default" that is "continuing." But this is not what the Indenture says. And it is not what the Indenture means. Defendants' crabbed reading of the Indenture is contrary to its plain terms, and ought to be rejected by this Court.[7]

## II. THE MOTION TO DISMISS SHOULD BE DENIED BECAUSE DEFENDANTS FAILED TO MEET THEIR BURDEN TO ESTABLISH THAT RES JUDICATA BARS PLAINTIFF'S CLAIMS

Defendants next argue that, even if the Trustee has standing, the Court should dismiss the Complaint based on the doctrine of res judicata. Def. Br. at 14-21.[8] This argument is similarly without merit.

Under the doctrine of res judicata, a "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014) (internal citation and quotation marks omitted). "The question is not whether the applicable procedural rules *permitted* assertion of the claim in the first proceeding; rather, the question is whether the claim was sufficiently related to the claims that were asserted in the first proceeding that it *should have been* asserted in that proceeding." *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001) (emphasis in original) (internal citation omitted). To prevail on a res judicata defense, Defendants "must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the

---

[7] Defendants effectively contend that the relevant Indenture provisions, when read together, mean that both the Trustee and the Noteholders have simply waived their right to pursue non-contractual claims unless and until the contract is breached. Under New York law, however, such a waiver of non-contractual claims must be expressed in "unequivocal terms." *See Lago v. Krollage*, 575 N.E.2d 107, 110 (N.Y. 1991).

[8] Unlike in their pre-motion letter, in which Defendants simultaneously argued that the Complaint was both pre-mature because an Event of Default had not yet occurred and late because it should have been asserted in the TIA Action, D.I. 16, Defendants now argue res judicata in the alternative, only if the Court finds that the Trustee has standing. Def. Br. at 14. At the Initial Pretrial Conference, however, Defendants suggested that they would still seek to dismiss the Complaint on res judicata grounds even if, under their reading of the Indenture, the Trustee's basis for standing (i.e., an Event of Default based on a default to pay cash interest) arose well after the close of the TIA Action. Transcript of Initial Pretrial Conference at 15:2-18:11, 27:14-22, *Bank of N.Y. Mellon Tr. Co. v. Educ. Mgmt. II LLC*, 17-cv-4610 (S.D.N.Y. Oct. 10, 2017).

subsequent action were, or could have been, raised in the prior action." *See TechnoMarine*, 758 F.3d at 499 (alteration in original) (internal citation and quotation marks omitted).

Defendants bear the burden of establishing all necessary requirements. *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008) ("Claim preclusion, like issue preclusion, is an affirmative defense."). They have failed to do so here. At bottom, this action involves a different claim, a different plaintiff, different Defendants, and facts that did not exist at the time of the TIA Action. Res judicata therefore does not bar the Trustee's claim.

## A. The TIA Action Involved Different Parties and Different Claims

Defendants have failed to show "both an identity of parties and an identity of issues" between the TIA Action and the current one. *See Badger v. Berritto*, 2000 WL 1721135, at *2 (S.D.N.Y. Nov. 17, 2000) (internal citation and quotation marks omitted).

First, there is no dispute that none of the parties here were litigants in the TIA Action. *See* Def. Br. at 18. Second, there should be no dispute that this litigation and the TIA Action involve different issues. The TIA Action involved an adjudication of the merits of Marblegate's statutory claim that the Intercompany Sale violated section 316(b) of the TIA and section 6.07 of the Indenture. Such adjudication did not involve an adjudication of the merits of any claim that Defendants New EM and New EM Finance are liable for the Notes on a theory of successor liability, nor did it involve the same evidentiary matters implicated here. *E.g.*, *Lumbard*, 621 F. Supp. at 1535 (listing factors examined for successor liability, including "continuity of ownership," "cessation of ordinary business, and dissolution of the predecessor," and "continuity of management").

To be sure, as detailed below, the Trustee's successor liability claim did not even exist at the time Marblegate prosecuted its TIA claim because, until just prior to the commencement of this action, the Notes were guaranteed by both Parent EDMC and New EM.

## B. Marblegate Was Not In Privity with the Trustee in the TIA Action

Again, Defendants acknowledge, as they must, that none of the parties here "were litigants in the [TIA] Action," but contend that the Trustee is nevertheless in privity with Marblegate as its "representative" or "proxy." Def. Br. at 18. Not so. In support of their argument, Defendants merely point out that the Trustee is pursuing this claim at Marblegate's direction with the assistance of the same counsel that represented Marblegate in the TIA Action. *Id.* at 18-19. Neither point establishes privity between the parties.[9]

Privity based on representation requires that "the interests of the person alleged to be in privity were 'represented [in the prior proceeding] by another vested with the authority of representation.'" *Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 327 F.3d 173, 185 (2d Cir. 2003) (quoting *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000)). Yet Defendants have failed to show which, if any, of the Trustee's interests Marblegate represented in the TIA Action, much less how Marblegate was vested with the authority to do so. Nor could they make such a showing. The Trustee, which acts on behalf of *all* Noteholders, necessarily had divergent interests from Marblegate in the TIA Action—especially considering that a substantial majority of then-Noteholders *consented* to the Intercompany Sale that Marblegate challenged and sought to enjoin in the TIA Action. The Trustee did not participate in the TIA Action and certainly did not vest Marblegate with the authority to represent it or the Noteholders as a whole in that litigation.

Notably, Defendants are unable to point to a single case where an organizational representative was barred from pursuing a claim simply because a member whose interests it represented sought to pursue a related claim on its own. Indeed, Second Circuit precedent

---

[9] The Trustee agrees with Defendants that Defendants share a sufficiently close relationship with the Issuers as to establish privity. *See* Def. Br. at 19-20. That is exactly why they ought to be liable for the Notes issued by their privies.

indicates exactly the opposite—privity exists only where the "fiduciary or organizational agent" pursued the claims on behalf of the class. *See Stichting*, 327 F.3d at 185 (collecting cases). Thus, for example, while an individual union member may be bound by a prior judgment brought by the union, *see Monahan*, 214 F.3d at 285-86, it makes little sense to bind the entire union because of a judgment against an individual member, who had no authority to represent the union's interests. Likewise here, Marblegate's prior TIA Action cannot bind the Trustee, who is empowered by the Indenture to protect the rights of the entire class of Noteholders, and had no reason to believe that Marblegate—a minority Noteholder when it first litigated the TIA Action—was acting in a representative capacity.

The authority upon which Defendants rely, *Taylor v. Sturgell*, is entirely distinguishable.[10] *See* Def. Br. at 18. The holding in *Taylor* confirms that a "party's representation of a nonparty is 'adequate' for preclusion purposes *only if*, *at a minimum*: (1) The interests of the nonparty and her representative are aligned, and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." 553 U.S. at 900 (emphasis added). Because Marblegate "was neither a fiduciary nor an agent" of the Trustee in the TIA Action, *see Stichting*, 327 F.3d at 186, there was never an understanding

---

[10] In *Taylor*, the Supreme Court held that a plaintiff making a FOIA request was not barred from litigating his action on a theory of "virtual representation" simply because his friend, with the assistance of the same lawyer, had previously brought an unsuccessful suit seeking the same records. 553 U.S. at 885. The Court further declined to address the government's argument that the plaintiff was simply an agent of the prior plaintiff, instead cautioning lower courts against "finding preclusion on that basis" because "[a] mere whiff of 'tactical maneuvering' will not suffice" and "principles of agency law are suggestive." *Id.* at 906; *see also United States v. Des Moines Valley R.R. Co.*, 84 F. 40 (8th Cir. 1897) (in quiet title action, government could not relitigate claim when it had allowed landowner to bring suit with the government's name as the nominal plaintiff); *LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co.*, 951 F. Supp. 1071, 1082-84 (S.D.N.Y. 1996) (holding that an indenture trustee is not an agent for the bondholders, as the indenture—which is a contract between the indenture trustee and the issuer, not between the indenture trustee and the bondholders—does not create an agent/principal relationship), *abrogated on other grounds as recognized in Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 115 (2d Cir. 2012).

Here, aside from noting that Marblegate directed the Trustee to bring this suit pursuant to section 6.05 of the Indenture, Defendants do not show how the Trustee is an "agent" within the established confines of agency law. Def. Br. at 18-19. Regardless, as explained *infra* section II.C, the Trustee is not "relitigating" the TIA Action at all—the TIA's application to the Intercompany Sale, the heart of the TIA Action, has nothing to do with the Trustee's claim for successor liability.

that Marblegate was "acting in a representative capacity," and there was no reason for the Court to take "care to protect" the Trustee's interests in the TIA Action. *See Taylor*, 553 U.S. at 900. The two parties are simply not privies, and Defendants have failed to satisfy their burden of proving otherwise.[11]

### C. The Successor Liability Claim Here Could Not, and Need Not, Have Been Asserted in the TIA Action

Moreover, the Trustee's successor liability claim could not have been asserted in the TIA Action. *First*, the Indenture's no-action clause barred Marblegate from asserting such a claim. Indenture § 6.06; *see supra* section I.A. *Second*, Marblegate lacked the ability to direct the Trustee to take any action pursuant to section 6.05 because, at the time of the TIA Action, Marblegate and Magnolia did not hold a majority of the Notes.

*Third*, the TIA Action was filed *before* EDMC completed any of the transactions involved in the Intercompany Sale, including transferring assets from the Issuers to Defendant New EM, so the facts necessary to assert a claim for successor liability did not yet exist when that complaint was filed. *See Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997) ("[I]f, after the first suit is underway, a defendant engages in actionable conduct, plaintiff may—but is not required to—file a supplemental pleading setting forth defendant's subsequent conduct."). Indeed, for nearly the entire pendency of the TIA Action, Defendant New EM *was a guarantor of*

---

[11] The Second Circuit has also recognized privity by representation where the current litigant, while not represented by a fiduciary or agent in the previous litigation, "nonetheless exercised some degree of actual control over the presentation of a party's case at the previous proceeding." *See Stichting*, 327 F.3d at 185. Defendants, however, have failed to establish a single fact suggesting that the Trustee exercised any control over Marblegate's presentation of its case in the TIA Action.

Moreover, Defendants' suggestion that the Trustee's reliance on the same law firm as Marblegate somehow establishes privity is explicitly refuted by their cited authority. *See Ruiz v. Comm'r of Dep't of Transp.*, 858 F.2d 898, 903 (2d Cir. 1988) (identity of attorneys "not conclusive on the issue of privity"). In any event, *Ruiz* involved two sets of plaintiffs who, "with the guidance of their law firm, formulated an overarching strategy for the two actions," and did not simply turn on the fact that the attorney was the same. *Id.* at 903; *see also Ferris v. Cuevas*, 118 F.3d 122, 128 (2d Cir. 1997) (explaining *Ruiz* not meant to bar all future plaintiffs who select the same counsel because "[c]ontrol is . . . the crux of the finding of privity" in such cases).

*the Notes*, so there was no dispute over its liability for the Notes. *See* Compl. ¶ 49. These facts did not change until the Second Circuit ruled on the TIA Action and the evidentiary record had closed.

Further, it is well-settled that res judicata does not apply simply because "both suits involved essentially the same course of wrongful conduct." *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 327 (1955) (internal quotation marks omitted). The Supreme Court has long recognized that a single course of conduct "may frequently give rise to more than a single cause of action," and that a second suit challenging events that had not yet occurred at the time of the first suit are not barred: "While the [earlier] judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." *Id.* at 327-28. This is particularly true where the new claims allege further wrongful acts in furtherance of the original scheme. *See, e.g.*, *id.*; *TechnoMarine,* 758 F.3d at 501 ("Our precedent makes clear that if the later conduct can support a cause of action on its own, it is the basis of a new cause of action not precluded by the earlier judgment.").

So too here. Defendants' focus on the fact that both suits involve the Intercompany Sale, *see* Def. Br. at 20-21, misses the point: the Trustee is pursuing a theory of successor liability based on events postdating the TIA Action, and will prove a different, if related, set of operative facts. *See Interoceanica Corp. v. Sound Pilots*, 107 F.3d 86, 91 (2d Cir. 1997) ("A first judgment will generally have preclusive effect only where . . . the same evidence is needed to support both claims, and where the facts essential to the second were present in the first."). Even when "much of the evidence on the two sets of claims would overlap," res judicata does not bar a subsequent claim when "the factual matrices to be proven by the two groups [of evidence] are not identical."

*See Tucker v. Arthur Andersen & Co.*, 646 F.2d 721, 728 (2d Cir. 1981) (upholding refusal to apply res judicata where fraud claims, although related, depended on relationships with different sets of plaintiffs); *see also TechnoMarine*, 758 F.3d at 503 (res judicata does not "immunize" defendants who continue similar wrongs); *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 287 (2d Cir. 2002) (no res judicata where party asserted right that did not exist at time of prior proceeding); *Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 327 (S.D.N.Y. 2015) (allowing complaint that "present[ed] claims that must of necessity require consideration of facts beyond those that formed the basis for [the prior action]").

Nothing in the Trustee's case depends on whether the Intercompany Sale violated the TIA, and the Court's resolution of that claim has no bearing on Defendants' liability under the Notes. While both actions address Defendants' ongoing scheme to divert and shield their assets from creditors, the Trustee's claim for successor liability could not have been brought in the TIA Action because the basis for its claim only arose *after* Marblegate had filed its complaint. Accordingly, the Trustee's claim is not barred by res judicata "regardless of whether [it is] premised on facts representing a continuance of the same 'course of conduct.'" *Storey v. Cello Holdings, LLC*, 347 F.3d 370, 383 (2d Cir. 2003) (citing *Lawlor*, 349 U.S. at 327-28).

Defendants have therefore not satisfied their burden of establishing that this action is barred by the doctrine of res judicata. In fact, despite bearing the burden to prove their res judicata defense, Defendants point to nothing more than the Trustee's Related Case Statement, ECF No. 4-2, to support their argument that the Trustee's claim could have been litigated in the TIA Action. By conflating the standard used to establish a related case with that needed to demonstrate res judicata, Defendants' argument would mean that res judicata would apply to bar claims in every related action. This argument defeats itself.

**III. THE MOTION TO DISMISS SHOULD BE DENIED BECAUSE THE COMPLAINT STATES A CLAIM FOR SUCCESSOR LIABILITY AGAINST NEW EM FINANCE**

Finally, Defendants contend that the Trustee does not state a claim against New EM Finance, stating that New EM Finance "did not receive any Issuer assets through" the Intercompany Sale and relying on the "Article 9 Agreement." Def. Br. at 21-22; *see also* Exhibit K to the Declaration of J. Devitt Kramer, ECF No. 29-11. Based on that representation, the Trustee has offered to enter into a stipulation of dismissal of its claims against New EM Finance without prejudice to reassert its claim against New EM Finance if it learns facts in discovery or otherwise suggesting that New EM Finance did, in fact, receive Issuer assets. The parties have agreed in principle to dismissal of the claim against New EM Finance without prejudice and are in the process of documenting that agreement in the form of a written stipulation.

If the parties are unable to agree on a stipulation of dismissal, however, that part of the Motion should also be denied. At this early stage of the litigation, the Trustee is entitled to discovery to prove its case against New EM Finance. Under the liberal pleading standards, the Trustee's allegations against New EM Finance—which, together with all reasonable inferences, must be assumed as true at this stage, *see Berkery*, 352 F. App'x 487—do adequately allege a claim against both Defendants. The Complaint alleges that Parent EDMC devised a scheme to avoid its liability under the Indenture by creating both New EM and New EM Finance. Compl. ¶¶ 30-35, 67-78. Both New EM and New EM Finance are "mirror-image entities" of the original Issuers of the Notes, and occupy their respective position in the corporate structure. *Id.* Drawing every inference in the Trustee's favor, the Complaint adequately states a claim that New EM Finance assumed Old EM Finance's assets and liabilities, occupies its place in the EDMC structure, continues Old EM Finance's operations, and is therefore liable for New EM Finance's liability on the Notes.

## CONCLUSION

For the reasons stated above, the Motion should be denied.

Dated: January 17, 2018
      New York, New York

*/s/ Sean E. O'Donnell*

Sean E. O'Donnell
Christopher W. Carty
Lucy C. Malcolm
Saurabh Sharad
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: (212) 872-1093
Fax: (212) 872-1002
sodonnell@akingump.com
ccarty@akingump.com
lmalcolm@akingump.com
ssharad@akingump.com

*Counsel for Plaintiff The Bank of New York Mellon Trust Company, N.A.*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2018, I electronically filed the foregoing documents with the Clerk of the Court using CM/ECF.  I also certify that the foregoing documents are being served this day on counsel of record either via transmission of Notice of Electronic Filing generated by CM/ECF or via e-mail.

*/s/ Sean E. O'Donnell*
Sean E. O'Donnell